## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**ADAM E. MURPHY,**

**Plaintiff,**

**v.**

**NEW JERSEY STATE POLICE, et al,**

**Defendants.**

Civ. No. 14-7338 (WJM)

**OPINION & ORDER**

Presently before the Court is Plaintiff Adam Murphy's second request for appointment of *pro bono* counsel. This application is decided without oral argument. Fed. R. Civ. P. 78. For the reasons set forth below, the application is **DENIED without prejudice**.

## I.   BACKGROUND

Murphy brings civil rights claims pursuant to 42 U.S.C. § 1983, alleging that he was beaten by New Jersey State Police during his arrest on August 17, 2013, that police failed to read him his rights when he was arrested, and that the prison where he was incarcerated failed to provide him adequate medical care in accordance with hospital discharge papers. (*See* Compl. 4-6, ECF No. 1.) After his arrest, Murphy was taken to the hospital and treated for injuries that allegedly occurred during this arrest, including contusions to his foot, head injuries, and damage to his eye socket. (*See id.* at 13-15.) Murphy was then taken to Keogh-Dwyer Correctional Facility where he remained until September 27, 2013. (*See id.* at 6, 19.) Plaintiff alleges that he was not made aware of the fact that his hospital discharge papers instructed that he see a specialist within two days following discharge. (*See* Compl. 4-6.) Murphy is currently incarcerated at State Correctional Institution - Coal Township in Pennsylvania and commenced the present action via a handwritten complaint. (*See id.*) In its January 14, 2015, Order, this Court dismissed the Warden, the Health Care Administrator, and the Charge Nurse from the instant action. (*See* Order Reopening Case at 4, ECF No. 5.) Murphy's application for *pro bono* appointment was subsequently denied as premature. (*See* Opinion and Order, ECF, No. 11.) In the interim, the sole remaining Defendant has answered and the parties have begun to undertake

1

discovery.  Consequently, Murphy once again brings an application for *pro bono* counsel.

## II.    DISCUSSION

Neither the Constitution nor any statutes provide civil litigants with the right to appointed counsel.  *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997).  However, district courts have "broad discretion" to appoint counsel, if appropriate, under 28 U.S.C. § 1915(e)(1).  *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002) (citing *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993)).  In exercising such discretion and determining the appropriateness of appointing counsel, the Third Circuit has instructed that district courts must first assess whether a given case or defense has merit, and then weigh specific factors, including:  (1) the litigant's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the litigant to pursue such investigation; (4) the litigant's capacity to retain counsel on his or her own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses. *Tabron*, 6 F.3d. at 155-57.  As to the factual investigation factor, appointment of counsel may be warranted when a case requires a significant degree of factual investigation, extensive discovery requests, expert testimony, or compliance with complex discovery rules.  *Tabron*, 6 F.3d at 155 ("[W]hen a case is likely to turn on credibility determinations, appointment of counsel may be justified.")  The *Tabron* list is non-exhaustive, and the Court may consider other facts or factors it determines are important or helpful. *Montgomery*, 294 F.3d at 499.

Nonetheless, "significant practical restraints on the district courts' ability to appoint counsel" exist.  *Tabron*, 6 F.3d at 157 (noting restraints such as "the ever-growing number of prisoner civil rights actions filed each year in federal courts; the lack of funding to pay for appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation.")  Therefore, appointment of counsel is warranted only where "special circumstances" indicate a likelihood of substantial prejudice to the plaintiff should he or she proceed without counsel.  *Smith-Bey v. Petscok*, 741 F.2d 22, 26 (3d Cir. 1984).  Furthermore, because "volunteer lawyer time is extremely valuable," "courts should not request counsel . . . indiscriminately." *Tabron*, 6 F.3d at 157.

For the purposes of Murphy's instant application, the Court assumes that his claims have merit.  Even so, in light of the criteria put forth by the Third Circuit and the practical restraints on the appointment of counsel, the Court concludes that appointment of *pro bono* counsel is not warranted at this stage.  Though Murphy has demonstrated a lack of resources and legal sophistication, he appears able to present his case.  *See Montgomery*, 294 F.3d at 501 (noting that this is the most "significant of *Tabron*'s post-threshold factors.")  In particular, Murphy has shown a basic understanding of the actions he must take to further his claims.  In his letters to the Court, Murphy has inquired about the service of his Complaint, whether specific documents had been received by the Court, and what additional documents must be filed with the Court to advance his action.  (*See* Docket Nos. 9, 17, 27.)  Murphy has also demonstrated an understanding of what information he needs to support his claim.  (*See* Letter from Adam Murphy inquiring as to the status of his pro bono counsel, ECF No. 27 ("In order for me to get the proper discovery paperwork and records I need an attorney to get hospital paperwork and records from the prison."))  Moving to the substance of his claim, the legal issues in Murphy's case are not complex, weighing against the appointment of counsel.  Case law regarding actions arising under § 1983 is well developed and courts usually do not appoint *pro bono* counsel in such instances.  *See, e.g., Terrell v. Hendricks*, No. 11–00832, 2012 WL 2341418, at *3 (D.N.J. June 15, 2012).

Moving to the discovery factor, courts evaluate the "extent to which prisoners . . . may face problems in pursuing their claims."  *Tabron*, 6 F.3d at 156.  However, it does not appear that Murphy has "need for factual investigation beyond that which [he] could conduct from his prison cell."  *Montgomery*, 294 F.3d at 503; *see Wolfe v. Kaminski*, No. CIV.A. 14-1956 ES, 2015 WL 4126562, at *3 (D.N.J. July 8, 2015) ("Courts often deny applications for *pro bono* counsel where plaintiffs do not demonstrate that it will be difficult to obtain relevant records").  Murphy obtained and attached to his Complaint the hospital discharge papers in support of his claim.  (*See* Compl. at 13, ECF No. 1).  Consequently, the discovery that Murphy has set forth in his application appears to be evidence he can obtain through his own efforts, and—based on his prior submissions in this case—the Court does not find that Murphy has demonstrated an inability to conduct factual discovery regarding his allegations.

Lastly, addressing the remaining *Tabron* factors, it is too soon to determine whether Murphy's case will turn on credibility determinations or will necessitate expert testimony and, therefore, these factors weigh neither for nor against

3

appointment.  Accordingly, assessing the *Tabron* factors, the Court will deny Murphy's application for *pro bono* counsel.  However, such denial is done without prejudice to Plaintiff's right to renew his application following the exchange of initial disclosures under Federal Rule of Civil Procedure 26 and written discovery.

Thus, for the above reasons and for good cause shown;

**IT IS** on this 8th day of April 2016, hereby,

**ORDERED** that Plaintiff's application for *pro bono* counsel is **DENIED** without prejudice.


/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**