UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ADAM E. MURPHY,**<br><br>Plaintiff,<br><br>v.<br><br>**NEW JERSEY STATE POLICE, et al.,**<br><br>Defendants. | Civ. No. 14-7338<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Adam E. Murphy ("Plaintiff" or "Mr. Murphy") brings this Section 1983 action *pro se* against Trooper William Cisko of the New Jersey State Police ("Defendant" or "Trooper Cisko"). The Complaint alleges that Trooper Cisko violated Plaintiff's Fourth Amendment rights by using excessive force during an arrest made inside the home of Plaintiff's friend in Montague, New Jersey, in August 2014. Defendant now moves for summary judgment on the basis of qualified immunity. For the following reasons, Defendant's motion for summary judgment is **DENIED**. The Court requests that Plaintiff be appointed *pro bono* counsel in preparation for trial.

**I.   BACKGROUND**

Mr. Murphy is presently incarcerated in Pennsylvania for felony escape and reckless endangerment. In July 2014, while residing at a community correctional facility in Wernersville, P.A., Mr. Murphy pulled a fire alarm, ran out of the facility and escaped by car with his then girlfriend. Deposition of Adam E. Murphy ("Murphy Dep."), 25:14.[1] Mr. Murphy spent the next month in his hometown of Port Jervis, NY. *Id.* at 41:21.

One month later, on August 15, 2014, Mr. Murphy spent the night at the home of friend Tasha Smith in Montague, New Jersey, along with childhood friends Joseph Mann and Alyssa Daly. Early the next morning, Mr. Murphy used Mann's purple Dodge Neon to drive Daly to a local Shop-Rite. In the process, Mr. Murphy took a wrong turn and wound

---

[1] During his deposition, Mr. Murphy described the Wernersville facility as a "a parole violator center, kind of like a halfway house." Murphy Dep. 23:19-23.  He was initially incarcerated for misdemeanor theft in 2010. *Id.* at 33:9.

1

up at a dead end, where he received directions from a resident who was outside walking his dog. After Mr. Murphy drove away, that individual apparently alerted the police about a suspicious vehicle in the area.[2]

Mr. Murphy returned to Smith's residence and parked Mann's vehicle in the driveway. Murphy Dep. 66:4. Several minutes later, a number of police officers arrived at the home in succession. One officer, a New Jersey State Trooper, "approached the house and used his flashlight to push some blinds on an open window." Defs.' Rule 56.1, ¶ 17. Seeing Mann and Murphy inside, the Trooper stated, "party's over gentlemen, come out with your hands up." *Id.* The legal basis for the officer's entrance onto the property is unclear based on the current record, suffice it to say that Mann and Murphy declined to exit the home. Not until Mr. Murphy was later apprehended did officers discover his status as an escapee. Murphy Dep. 79:3-7.

Officers soon entered the home and discovered Murphy hiding in a crawlspace in the basement. Murphy Dep. 105:23-106:11. In Defense counsel's own words, "a State Trooper grabbed [Murphy's] foot and immediately ripped him out of the crawlspace," prompting Murphy to "flail[] his arms as he fell to the floor to prevent his head from smashing off of the [concrete] floor." Defs.' Rule 56.1 ¶¶ 27-28. At least three Troopers "landed on Murphy when he hit the floor," and then handcuffed him. *Id.* at ¶ 29. After arresting Murphy, Trooper Cisko allegedly struck him the face, provoking an exchange of obscenities. Murphy Dep. 120:10-121:2. Murphy alleges that Cisko then struck him several additional times in the face and ribs. *Id.*

Murphy was later taken to the hospital and diagnosed with a facial fracture, a "blow out" orbital floor fracture,[3] a concussion and contusions on his foot. Lynch Decl., Ex. C. After two years and roughly seventeen visits to ophthalmologists, Murphy continues to experience blurred vision and believes he may have sustained permanent nerve damage. Murphy Dep. 186:1-187:6. Charges filed against Murphy subsequent to the arrest were later downgraded or dismissed. ECF No. 32.

**Procedural History**

On November 20, 2014, Mr. Murphy filed a 42 U.S.C. § 1983 claim against Trooper Cisko and other defendants for using excessive force in violation of the Fourth Amendment. By Order dated January 14, 2015, the Court dismissed the other defendants but determined that the Complaint adequately stated a § 1983 claim against Cisko. ECF. No. 5. On February 10, 2015, the Court denied Murphy's request for *pro bono* counsel, without prejudice. ECF No. 11. A similar request for counsel was denied on April 8, 2016.

---

[2] Evidently there had been a number of burglaries in the neighborhood around this time. Murphy Dep. 74.

[3] A "blow out" is when the force of impact collapses the inside wall of the orbital bone, such that "the tissues around the eye . . . may become trapped within the fracture as the floor of the orbit 'blows out' into the sinus below." Lynch Decl. Ex. C.

Discovery ended on October 12, 2016. ECF No. 37. Defendant Cisko now moves for summary judgment.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 417 (3d 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416. The court considers the record in the light most favorable to the non-moving party, while drawing all reasonable inferences in that party's favor. *Bowers v. NCAA*, 475 F.3d 524, 535 (3d Cir. 2007).

## III.   DISCUSSION

Trooper Cisko moves to dismiss on the basis of qualified immunity. Officers carrying out official duties are entitled to immunity unless they violate "clearly established law." *Pearson v. Callahan*, 555 U.S. 223, 243 (2009). The question here is whether it would have been "clear to a reasonable officer" at the time of the incident that Cisko's alleged conduct violated the Fourth Amendment's ban on "unreasonable . . . seizures." Const. amend. IV. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989) (The Fourth Amendment "provides an explicit textual source of constitutional protection against . . . physically intrusive").

If Mr. Murphy's statements are accurate—if he was struck multiple times while in handcuffs—then Trooper Cisko violated Murphy's "clearly established" constitutional right to be free from excessive force. To repeatedly beat a small handcuffed man in the basement of a house crowded with police officers is objectively unreasonable. Surely it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). This was "an obvious case" of an official violating "a 'clearly established' right." *See White v. Pauly*, 2017 WL 69170, at *5 (Jan. 9, 2017). In Mr. Murphy's own words, "it doesn't take a rocket scientist to figure this stuff out." Tr. 124:19-20.

Police who enter unknown environments in pursuit of potentially dangerous suspects must be permitted considerable discretion. But there is simply no government interest in striking an unarmed, handcuffed arrestee. *See Santini*, 495 F.3d at 416 (quoting *Graham*, 490 U.S. at 386) ("To determine objective reasonableness, we must balance the 'nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"); *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004) (recognizing a "'clearly established' right to be free from the use of excessive force in the course of [handcuffing]"). Of course, a jury must determine whether

3

these events actually occurred as described in Mr. Murphy's complaint. *See, e.g.*, *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004) ("[R]easonableness under the Fourth Amendment should frequently remain a question for the jury . . .") (citations omitted); *Rosenberg v. Homoki*, 2009 WL 982146, at *1 (E.D. Pa. Apr. 9, 2009) ("[E]xcessive force [cases] often depend on issues of sequence and timing that can only be resolved by a jury.").

### Appointment of Pro Bono Counsel[4]

Section 1915(e)(1) provides that a "court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). District courts have "broad discretion" to request the appointment of *pro bono* counsel, and may do so *sua sponte* at any point during litigation. *See Montgomery v. Pinchak* 294 F.3d 492, 498 (3d Cir. 2002).

The Court must first assess whether a given case or defense has merit. *Tabron*, 6 F.3d. at 155. If the case has merit, the Court must next weigh specific factors, including (1) the litigant's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the litigant to pursue that investigation; (4) the litigant's capacity to retain counsel on his or her own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses. *Id.* at 155-57. The list is non-exhaustive, and the Court may consider other facts or factors it determines are important or helpful. *Montgomery*, 294 F.3d at 499.

The Court will appoint *pro bono* counsel in this case. On its face, the Complaint has merit. Mr. Murphy cannot afford counsel and is unlikely to try the case effectively himself. He plans to introduce expert medical testimony regarding his injuries, *see* ECF No. 44, and the case rests largely on determinations of credibility. Further, none of the *Tabron* factors weighs against appointing counsel.

### IV. <u>CONCLUSION</u>

For the reasons foregoing, Defendant's motion for summary judgment is **DENIED**. Pursuant to the accompanying Order, the Court also requests that Plaintiff be appointed *pro bono* counsel in preparation for trial.

 /s/ William J. Martini  
**WILLIAM J. MARTINI, U.S.D.J.**

**January 23, 2017**

---

[4] Mr. Murphy's previous two requests for *pro bono* counsel were denied without prejudice. ECF. No. 11, 29.